McDONNELL (SACKET v.). See Case No. 12,202.

## Case No. 8,775.

### In re McDONOUGH.

### WHITE v. RAFTERY.

[3 N. B. R. 221 (Quarto, 53);[1] 1 Chi. Leg. News, 361; 16 Pittsb. Leg. J. (O. S.) 110.]

District Court, W. D. Missouri. June Term, 1869.

BANKRUPTCY—PREFERENCE — PURCHASE BY CREDITOR—KNOWLEDGE OF INSOLVENCY—EQUAL DISTRIBUTION IN BANKRUPTCY.

1. When a creditor has reasonable cause to believe his debtor insolvent, purchases goods of him, and such debtor makes the sale with a view of giving a preference, the transaction is void, and the assignee in bankruptcy of such insolvent may recover the value of the goods from such creditor.

[Cited in Graham v. Stark, Case No. 5,676: Martin v. Toof, Id. 9,167.]

2. The sale cannot be declared void unless the purchaser had reasonable cause to believe the seller to have been insolvent when he made the sale, and reasonable cause means a state of facts which would put a prudent man upon inquiry as to the condition of the person from whom he purchases.

[Cited in Singer v. Sloan, Case No. 12,899.]

3. Neither local inclinations nor the employment of the process of state courts can longer be successfully employed to thwart or defeat the equal distribution of an insolvent debtor's estate among all his creditors, regardless of their locality.

[In the matter of John R. McDonough, a bankrupt, and of Henry K. White, assignee, against Thomas J. Raftery.]

Woodson, Vineyard & Young, for plaintiff.
Hall & Oliver and W. Judson, for defendant.

KREKEL, District Judge. This is an action brought by the assignee under the first clause of the 35th section of the bankrupt law [of 1867 (14 Stat. 534)], to recover property, or the value thereof, alleged to have been conveyed by the bankrupt to defendant Raftery, with a view of giving him, the said Raftery, a preference. The testimony in the case tends to show that Raftery, an old merchant, on the 1st day of July, 1867, sold his stock of general merchandise to McDonough, after inventory taken, at upwards of eight thousand dollars; that he received in payment four thousand dollars, and two notes of equal amounts due in six and twelve months, Lysaght and McGee becoming securities; that McDonough rented the house in which the goods purchased were kept, of Raftery, the owner; that after keeping store until about November 1, 1868, McDonough sold the stock of goods on hand to Raftery in a lump, and without taking an inventory, for the round sum of five thousand dollars, one thousand three hundred and fifty dollars of which was to be paid on balance of the last of the notes given for original purchase-money, which was unpaid and under protest; eight hundred dollars to bank

[1] [Reprinted from 3 N. B. R. 221 (Quarto, 53), by permission.]

on overdrawn account; five hundred dollars in cash, and balance in short, negotiable paper. Prior to making the purchase, Raftery had incidentally learned that McDonough was owing upwards of one thousand six hundred dollars to the jobbing house of Tootle, Fairleigh & Co., of St. Joseph. Raftery was well acquainted with the business of McDonough, and on intimate terms with both McDonough and Lysaght, the security for McDonough, and who had had at one time charge of McDonough's business while he was sick. McGee, the other security for McDonough, had been released on notice of his liability on note referred to. A number of witnesses testified that McDonough was considered solvent at the time of sale, that he was in good credit, and had no other property than the stock of goods.

The insolvency of McDonough is admitted, and the first question to be decided is, had Raftery any claim against McDonough, or was he under any liability for him? The last of the two notes given in consideration of the original purchase had been assigned by Raftery to a bank, and when it became due Raftery, in order to avoid protest, waived it by appropriate indorsement on the note. This created a liability on the part of Raftery for McDonough. The next inquiry is, had Raftery reasonable cause to believe McDonough insolvent when he made the purchase; for, unless this was the case, the sale cannot be declared void. "Reasonable cause to believe," in this connection, means a state of facts or circumstances which would lead any prudent man to the making of inquiries. Raftery knew of the protested note, and, to indicate his own view as to his liability on it, he secures the payment in the trade. He knew of the indebtedness of one thousand six hundred dollars to Tootle, Fairleigh & Co.; he knew of the overdrawn bank account; he knew that the stock of goods had gone down from eight thousand dollars and upwards to five thousand dollars in sixteen months. These facts were well calculated to put Raftery upon inquiry, and, had he made any whatever, he could not have failed to learn the actual condition of McDonough, for one-half of his creditors reside in St. Joseph. The books of McDonough would at once have disclosed his condition; and is it unreasonable that purchasers, under circumstances such as surrounded this case, should be required to make reasonable efforts to learn the condition of the persons with whom they deal? It will not do to ask protection on account of ignorance, when a very small amount of inquiry would have given all necessary information. Raftery, in the opinion of the court, had reasonable cause to believe McDonough to be insolvent at the time of the transfer under consideration. To make the transaction void, it must also be done by the debtor with a view to give a preference. McDonough certainly knew his own condition of insolvency. His acts of satisfying the Raftery note in the trade, and afterwards distributing portions of the proceeds among his St. Joseph creditors exclusively, too plainly indicate his intention in the matter to admit of doubt.

The court is asked that, should the judgment be unfavorable to defendant, he be allowed, by way of reduction, whatever amount was paid by McDonough out of the proceeds of sale to creditors, or, at least, so much thereof as they ratably would have been entitled to on an equal distribution of the estate. The equitable view underlying this argument cannot be made available in this proceeding, for the direction of the law is that the transfer shall be void, and the assignee may recover the property or the value thereof from the person receiving or to be benefited by it. There is also the further objection that it would permit the debtor to make the distribution of his estate, a matter which the bankrupt law prohibits. The question whether those who have received payments should refund, and to whom, the court does not undertake to decide, it being outside of the case.

It may not be improper here to remark that neither local inclinations nor the employment of the process of state courts are longer successfully to be employed to thwart or defeat the equal distribution of an insolvent debtor's estate among all his creditors, regardless of their locality.

The conclusions the court has arrived at are, that McDonough, at the time of the transfer, was insolvent; that a liability from him to Raftery existed, and that he made the transfer with a view to prefer Raftery; and instead of the provisions of the bankrupt law. The value of the goods is shown by the appraisement of Raftery, and other evidence, to be at least four thousand five hundred and ninety-two dollars and five cents, and judgment will be rendered against him for that amount with costs.